Good morning. Joseph Toups from Williams Castor on behalf of the appellants. This is our third time on appeal in this case, this time from the district court's order granting a motion for summary judgment. However, serious and genuine issues of material fact require reversal and remand to a different district court judge for a jury trial. First, calling appellants murderers is defamatory per se as a matter of law. That is because... What happens if, in ordinary terms, rather than legal sort of definition of the crime, they were killers? Well, that goes to the issue of falsity, right? Is this a false or a true claim? And so after the district court first makes the determination, is this statement capable of being defamatory? Then it goes to a jury to decide whether or not, in fact, that was defamatory. So the jury decides was this true or false. Do you dispute that they're killers? I do not dispute that they killed someone. So continue on. Since the district court makes the first determination... Why do you say it's per se defamatory? Because it may be an opinion. Of course it's an opinion. I mean, a killing is not an opinion, but a murder, as opposed to manslaughter, is an opinion. It is an opinion made by a jury. And a jury convicts someone based on whether or not they are murder. A killing is different from murder. Right. Yes. So what... So I'm stuck with the idea that calling somebody a murderer is imputing a deliberate intention to that person, which is an opinion that the person forms who's stating the question. If it's an opinion, then it's not a statement of fact, and it's not defamatory per se. Am I mistaken on that? I will direct the court to Verne Sims Ford v. Hagel, 713 Pacific 2nd, 736. The court held that statements that the respondents were thieves as accusations of criminal activity are not constitutionally protected opinions. In reaching that decision, the court quoted another case out of New York, the Court of Appeals for New York, and they said accusations of criminal activity, even in the form of opinion, are not... I just said that... are not constitutionally protected. No First Amendment protection enfolds false charges of criminal behavior. So whether or is irrelevant to the analysis here and should be put to the jury. Just so we're clear about this. So if I say, I think that guy's a crook, in your view, that would be opinion and not actionable. Well, when you get to the Dunlap factors, I think is what you're talking about, is in... you are... are there terms of apparency that would indicate to the audience that I think that that's my opinion Sure. Your statement, it sounds like there's terms of apparency there. Maybe that's indicating more of an opinion than a fact. However, here, there were no terms of apparency. There wasn't... isn't anything that said, I believe these are murderers. They are accused murderers. They may be potential murderers. No, she said, as a statement of fact, they are murderers. So when she knew... So if people say that President Biden is a murderer because of what's going on in the Middle East, then he could sue all these people for defamation? You could sue them. He may not be successful. Well, OK, but OK, you're saying there's a viable... you're saying there's a viable cause of action under Washington law for President Biden. If people say, President Biden, you're a murderer. I think it depends on who the speaker is, to whom it is spoken to. And say the same thing, same rally, same, you know, the same plaintiff in this case says, hey, you know, same defendant in this case says, hey, President Biden, you're a murderer. Steps up to a mic at a rally and just boom, kind of like what happened here. Maybe not the most thought out statement, but just says it. Yes, it's actionable. It's actionable. OK. Even though President Biden's a public figure? You have to prove actual malice, right, in that statement. So if there's a public figure involved in a defamation claim, it goes a little bit further. Are your clients, for purposes of this case, public figures? Yes, they are. So you've got to show malice. Yes. So where's the malice? So the malice comes in. It can be inferred from the respondent's hostility and failure to properly investigate, and it also may come from a separate, independent evidence of intent to avoid the truth. So if you look at Duck Tan and Hart Hanks, in both of those cases, the defendants published stories without consulting with anyone else about information that may have shown what they were stating may have had some significance on their investigations. In Duck Tan specifically, the court found that the defendant's systematic and continuous failure to interview the plaintiffs and reliance on vague sources instead constituted malice. And so here... Help me out as to why here there's malice. So in her deposition, Sawant confirms that she didn't read any newspaper articles. She never reviewed officer statements. She didn't contact anyone from the force review board or the force investigation team, speak with anyone at SPD, not even the captain. She intentionally didn't contact those sources. And that is apparent in her deposition because of her bias and her hostility towards her understanding of those bodies as being not impartial. And she decided not to, again, when stating this for the second time in 2017, she knew and knew the outcome of the inquest and the independent investigations, two of them. And yet she didn't temper any of her statements with any terms or try to negate her statements, which those certainly would have done. Okay. And again, as a councilwoman, she has many more sources available to her than any, you know, regular lay person. Her position as a government official, essentially, you know, the boss of the police department, gives her the opportunity to do these investigations. And by admitting to willingly not consulting any other sources as she does in her deposition, she admits that she fails to investigate. And that she admits that she did so in complete avoidance of the truth because she says that it wouldn't help working people. And yet these investigations, time and time again, two of them, one done by an additional done by the coroner's inquest, all found no evidence of wrongdoing. Let me return to Judge Bea's question. And that is, she may well believe that they are murderers. Why is that not her opinion? And therefore, when she says they're murderers, it's an expression of opinion. Well, again, that opinion is not constitutionally protected. Why not? Because it imputes criminal, unlawful activity. It's an accusation of criminal activity that is not protected by the First Amendment. What if we were to say she's not speaking in terms of law, but she's speaking in terms of ordinary parlance? So, for example, I'll use Judge Owens's example. She were to say about somebody, that guy's a crook. And what we know is, well, he is accused of taking bribes and so on, but he's never been actually adjudicated of having done something that's criminal. But in my view, he's a crook. And I'm a public opinion, I'm a public official. I'm engaged in some sort of a quasi, I'll call it campaign business. I'm speaking to a crowd, trying to convince somebody to elect me, or these guys are all crooks. I mean, there's some imprecision there if we're talking the definitions in a court of law. Right. But why is this imprecision when we're not in a court of law, but rather in front of a crowd in a political setting? Why is that actionable when it's undisputed that they're killers? Because the word that was used was not, they are killers. They are murderers. And she is an elected official. She is not just a lay person. So she is standing before everyone. And granted, she did this twice. Maybe she would have had the opportunity a year later to say, maybe I should revise my statement. And instead of calling the murderers, which I know now to not be true, because they were never found or any wrongdoing. And to this day, they were- Wait a minute. That doesn't mean it's not true. What it means is they weren't prosecuted. But in the absence of proof that they were murderers, it must be. People say things about OJ all the time. And he wasn't convicted either, but people call him a murderer. So his estate could sue people for calling OJ a murderer? Right. Because it's provably false. He was never convicted. Well, beyond a reasonable doubt, whether someone did something are two different standards, but go ahead. So I'm not sure I addressed your question fully. Here, this was a rally. Steps from City Hall. City Councilwoman was- We're talking about two rallies and both rallies she called the murderers. Yes. Steps from City Hall. She was already elected official. She was not on the campaign trail. This time- They're never not on the campaign trail. I would agree with that statement. And I will be reserving three minutes. I didn't say that at the beginning. It is reasonable that the audience could have thought that she was stepping from City Hall, making an official statement based on the city. Based on having four days, even at the first time, even from the first incident to the first rally, to say, this is what our city's position is. This is what we're going to do to take action. Whether or not, or excuse me, how the audience understood her statements to be opinion or fact is a genuine issue of material fact that should be left to the jury. I will reserve the rest of my time. Very well. May it please the court. I'm Darren Dalmat on behalf of Shama Sawant. In light of state and federal constitutional protections, Washington defamation law robustly protects speech criticizing public employees' performance of their duties, including police officers' use of force. In light of the questions that you asked my friend on the other side, I'm going to streamline my opening presentation and just urge the court, if it hasn't already, to actually look at the videos of the two speeches that are at issue here. These are available at the record on pages 734 and 737. There are links. One is in Judge Peckman's earlier opinion and another is from Dan Brown's declaration. They're links to a Stranger article from the Stranger, the publication here in Seattle, and to an ABC Channel 4 article. The Stranger article will show the first speech. It's got about two minutes. And what you will see when you watch that is that Shama Sawant, who did not plan that first rally, she was sitting in City Hall, heard the cries, the grieving cries, the protesting cries, the cries of outrage from people who had seen yet one more Black man shot and killed at the hands of the police. She left her office from City Hall. And what the video shows is she is standing in the middle of the street, surrounded by people carrying picket signs saying, Justice for Che Taylor. One of them has his hand up in a fist. There's someone shaking a kind of peace stick. This is an environment where she was not standing behind an official podium like I am now trying to compare cold, dry evidence to legal standards. She opened her speech with expressions of solidarity. She expressed her solidarity for the Black Lives Matter movement and she called for accountability. When she uttered the word accountability, the first time the crowd erupted into applause. This is not a dry press briefing where objective facts were expected. The audience was mourning and grieving and expressing outrage. That is what they expected from her and that is what she delivered. If you fast forward a year, the killing of Charlena Lyles, this is your honors may remember, was a black woman who was pregnant at the time who called the police for help because she believed that her house was being burglared. The police came and they were talking about whether to use a taser or a gun on her. And in the couple minutes that they had that discussion, they did not call the crisis center. They shot her and her unborn baby dead. She died. The video is an hour-long video. It shows a series of speakers, family members, expressing words of grief, crying. It shows the family's lawyer, James Bible, who represented both the Taylor family and the Lyles family, explaining how in those couple moments, minutes, that the police officers and the Lyles killing had been conferring with one another whether to use a taser or get a gun, that they could have used that time to call a crisis center. They failed to do so. And so he began a chant, started Soto Voce, murder is murder is murder is murder. The crowd was completely transfixed on him. He repeated this five or six times with escalating vigor and the crowd is chanting with him. It goes on to show Andre Taylor, the surviving brother of Che Taylor, who recounted the Seattle Times story that we submitted to you that did that study of the 230 police-involved killings over the prior decade, where there was only one prosecution because of the then existing defense law, that's RCW 9A.16.0403, which set forth the actual malice standard. There was only one prosecution and no convictions in the last decade prior to these events. And Andre Taylor told the crowd about that and he went through the same litany, the same prayerful litany that you hear at so many Black Lives Matter protests. He cited the name of Freddie Gray, said murder. He cited the name of Trayvon Martin, said murder. He went... Well, I'm sorry, let me just jump in here because I appreciate what you're saying, but also from the officer's perspective, right, to play devil's advocate here in a sense, they have a public official at a rally saying some pretty bad things about them. Now, the First Amendment's a very important doctrine and I think that may resolve this case, but what are the officers supposed to do in this situation in terms of, you have a public official who's saying things about them that in their mind are, you know, dangerous, people could come, potentially take steps and go after the officers. Is there any recourse under Washington law? Like, what if every day she came to Washington and she said the same thing over and over again? Is there anything the officers can do to stop her from doing that? Absolutely. They could bring this defamation suit and they would have a burden to show the three things that they were unable to show below. They would first have to show an objective, falsifiable, factual assertion. They failed to do that. That looks at the context, the three Dunlap factors, which focused on context here, a political rally, a reasonable audience expectations, and the implication of undisclosed facts. They failed to adduce any evidence on any of those three burdens. Assuming they got past that hurdle and went to the falsifiable fact, they would have to actually show that her assertion was false. They came forward with no evidence. They submitted a declaration each. They don't even give a bald denial in that declaration that they came with no intent to kill. The record as it stands here in front of this court is that there's no evidence and they bear the burden. There's no evidence that what she said, even if it were taken as a factual assertion, is false. And then of course, there's no showing of actual malice. To show actual malice, they have to show that Shama Sawant entertained a serious doubt, that she subjectively entertained a serious doubt as to the truth of her statements. There's no evidence of that. Isn't the acquittal some evidence that it was false? No, Your Honor. And there was no acquittal. First of all, there was no charge. There was no prosecution. And what the protesters, including Shama Sawant, were complaining about was how broken the criminal justice system is. Judge Owens asked an excellent question about OJ Simpson. He was prosecuted and acquitted. He was later held liable by a jury for wrongful death. These facts are right on point. The Taylor family was able to get a $1.5 million settlement in a civil wrongful death suit after Judge Zille decided, looking at all the evidence, that the officers had failed to present enough evidence to warrant summary judgment in their favor. And following that denial of summary judgment, the city negotiated a settlement in favor of the family. So again, I'll follow along with, I guess, Judge Owens' idea of devil's advocate. So they settled, but maybe they settled because it was manslaughter. I mean, they don't settle. I mean, a wrongful killing doesn't necessarily make it a murder in the legal sense of what a first degree and so on. So how do you respond to that? Absolutely. And the communicative content of the accusation of murder has to be understood in context. The Supreme Court in Greenbelt decided that blackmail is not always an accusation of crime. Sometimes it's an accusation of hard negotiating tactics. The Supreme Court in letter carriers in Austin decided that traitor is not always an accusation of the crime of disloyalty to the United States. Sometimes it's just a scab. Someone who crosses a picket line and is not in solidarity with the workers who make the statement. Here, the context was that these two officers killed a man at near point blank range when there was no evidence that they saw a gun in his hand at the time. And Shama Sawant, like all the protesters who were out at those two rallies, thought that was wrongful. They didn't know what the, well, I can't speak to what exactly they knew. But in the second rally, Andre Taylor spoke specifically about the malice law. And Shama Sawant specifically said, and this is the year later after he was killed, that there was no justice under the current system for Che Taylor. So she disclosed, in essence, the fact that there had not been a conviction, there had not been a prosecution. She was condemning the system as inadequate to protect the lives of black and brown people who were unfortunately, yet again, gunned down at the hands of the police. Unless your honors have further questions, I'll submit on the briefs. All right, thank you, counsel. Thank you. Just to highlight why there are genuine issues of material fact requiring reversal and remand. My friend opposing counsel and I both have different interpretations of the sentence. We cannot rely on the existing processes to determine why Charlene was killed because that process has failed to Che Taylor. You mumbled, I couldn't hear you. I'm so sorry, yes. So I will repeat that this highlights why there is a genuine issue of material fact here because both my friend and I have different interpretations of one sentence. We cannot rely on existing processes to determine why Charlene was killed because that process has failed Che Taylor. That statement implies that Sawant had superior knowledge of undisclosed facts and she did actually have superior knowledge at that time that sentence was spoken. Again, even knowing the results of the inquest and the investigation being that there was no wrongdoing, there were no convictions. She failed to qualify any of her statements. She never said. The fact that there was no charge doesn't necessarily mean that there was no wrongdoing by the officers. We all know that. But she didn't say, I think that these are wrong. I think these are wrongful murders, wrongful killings. She said they're murderers. That's different. And what are we supposed, what are the appellants supposed to prove in order, should we prove a negative? Do we have to show our innocence before the court in order to say, yes, that's a false statement? Because that cannot, that turns criminal law on its head. That cannot be what we are required to show when there is an absence of a conviction rather than we must show that we are innocent. And how the audience interprets her speaking is a matter that should be put to the audience, to the jury. What is the triable issue of fact as to her superior and undisclosed knowledge? Repeat your question, please. In order for an opinion to be defamatory, as I understand Washington law, there has to be some proof that the speaker had some undisclosed knowledge at the time that he or she said the statement. Right. What is the factual issue as to her undisclosed knowledge? The factual issue is that she knew of the coroner's inquest, that she knew of the independent investigations. And yet at the second rally in 2017, she did not say, you know, based on these investigations, these are accused murderers or I am accusing them of murder. She just flat out called them murderers. There was no tempering or offering that information to try to negate her. Was that independent investigation confidential to her? No, I don't believe. Well, I'm not sure. Why wasn't it known by the people she was talking to? I'm not sure. It wasn't undisclosed then. I mean, undisclosed means that she knows something that nobody else knows. What is the triable issue of fact that she had knowledge of undisclosed evidence? The results of that. The result of what? She should have made that known during the rally. She should have made known that there was an independent investigation which cleared these people, which was known to everybody in the community. Yeah. I mean, unless it was confidential information, which only she had. Okay, got you. 20 seconds. Do you want to say anything about costs? No, we're resting on our breath. Very well. Thank you. All right. Thank you both for your briefing and argument in this case. This matter is submitted.
judges: FLETCHER, BEA, OWENS